UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 11, 2019

LETTER TO COUNSEL

RE: *Great Northern Ins. Co. v. Baltimore Gas & Elec. Co., et al.*
Civil No. SAG-19-2429

Dear Counsel:

Plaintiff Great Northern Insurance Company ("Great Northern") filed this subrogation action relating to a fire at the home of its insureds. ECF 15. I have reviewed the Motion to Dismiss Plaintiff's Amended Complaint, ECF 28, filed by Defendant Aclara Meters, LLC ("Aclara"). Plaintiff Great Northern Insurance Company ("Great Northern") filed an opposition, ECF 30, and Aclara filed a reply, ECF 31. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Aclara's Motion will be denied.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the

plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), cert. denied, 566 U.S. 937 (2012).

Under that relatively lenient standard, Great Northern's Amended Complaint sufficiently states a products liability claim against Aclara. The specific factual allegations in the Amended Complaint include:

> 10. Before March 2, 2019, defendant BGE installed a 400 amp electrical smart meter at the Property ("the Meter").
>
> 11. The Meter was designed, manufactured and/or distributed by defendant Aclara.
>
> 12. On or about March 2, 2019, a fire occurred in the Meter ("the Fire").
>
> . . .
>
> 20. The Fire originated within the Meter and the actual fire was contained to the Meter itself and the remaining damage to the Property was from the smoke.
>
> . . .
>
> 22. There was a failure of the insulation/isolation within the internal electrical components within the meter such that current flowed in an unintended manner creating heat and resulting in arcing events inside the Meter, which caused it to catch Fire.
>
> 23. The arcing occurred in the area of the last terminal in the Meter before the power goes to the house.
>
> 24. The significant arcing events within the Meter consumed many of the internal components making it impossible to identify the specific component within the Meter that initiated the failure.
>
> . . .
>
> 26. Defendant designed, manufactured, and/or distributed the Meter, which was intended by the defendant Aclara to be used by members of the general public such as plaintiff's insureds.
>
> 27. The Meter was unreasonably dangerous and unsafe for its intended use by reason of a defect within the Meter, which existed when defendant Aclara placed it into the stream of commerce.

> 28. The Meter had not been modified or altered in any way prior to the Fire and was in the same condition as when it was placed into the stream of commerce by defendant.
>
> 29. The area where the failure occurred was within the Meter in an area that could not have been accessed by the consumer.
>
> 30. The defect within the Meter resulted in an internal electrical malfunction which caused the Meter to catch fire while being used for its ordinary and intended purpose of transmitting electrical service from defendant BGE's electrical distribution system to the Property.
>
> 31. If the Meter were properly designed and manufactured it should not have caught Fire.
>
> 32. Defendant BGE has advised plaintiff that it is aware of other similar meter fires.
>
> 33. As a direct and proximate result of the defective condition of the Meter, the Fire occurred and resulted in significant damages to the Property.

ECF 15.

To recover for strict product liability in Maryland, a plaintiff must show "(1) the product was in defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without a substantial change in its condition." *Phipps v. Gen Motors Corp.*, 363 A.2d 955, 959 (Md. 1976). Taking all of the facts alleged in the Amended Complaint as true, as I must for the purposes of a Rule 12(b)(6) motion to dismiss, Great Northern's factual allegations as set forth above suffice to meet each of those four elements.

Defendant's Motion relies heavily on *AIG Property Casualty Co. v. Eaton Corp.*, Civ. No. JKB-18-1853, 2019 WL 1586253, at *2 (D. Md. Apr. 12, 2019). ECF 28-1 at 6-7. In *Eaton,* the Court considered the case in the posture of a motion to amend the complaint, after some limited discovery had occurred, to completely change the product alleged to have been defective. 2019 WL 1586253, at *2. The proposed amended complaint did not include any specific facts alleging how the new proposed defective product, a "super plug," had deviated from its approved design or had been identified as the actual cause of the fire. *Id.* at *2-4. The instant case is readily distinguishable. Here, because the fire was contained exclusively to the meter, Great Northern has alleged facts sufficient to plausibly establish that some component of the meter was the cause of the fire, has alleged the general section of the meter where the malfunction occurred, and has plausibly alleged why the exact cause cannot be pinpointed to a greater degree.

In fact, Great Northern, in its opposition, clearly expressed its intent to rely on the "indeterminate defect" theory of product liability, because the fire had melted the meter's components such that the precise component that failed could not be identified. *See, e.g.*, ECF 30 at 2. Maryland courts use five factors, first elucidated in *Harrison v. Bill Cairns Pontiac*, 549 A.2d 385, 390 (1988), to determine whether the Plaintiff has put forth sufficient circumstantial evidence to establish an indeterminate product defect. *See id.* (listing the five factors as (1) expert testimony regarding causation, (2) the occurrence of the accident shortly after sale, (3) other accidents in similar products, (4) the elimination of other causes, and (5) the notion that this type of accident does not happen without a defect). Aclara suggests, in its reply, that Great Northern has not "alleged sufficient facts to satisfy the *Harrison* factors." ECF 31 at 4. However, Aclara cites no authority for the proposition that the *Harrison* factors must be alleged in the Amended Complaint. By their express terms, the *Harrison* factors contemplate an evidentiary showing. *See, e.g.*, *Harrison*, 549 A.2d at 390 (listing the first factor as "expert testimony as to possible causes"). The cases Aclara cites in its Reply, which consider the *Harrison* factors, are inapposite, for each case arose in a post-discovery posture, such as summary judgment or directed verdict. ECF 31. The standard that Aclara attempts to hold Great Northern's Amended Complaint to is much higher than the lenient plausibility standard Rule 8 contemplates.

The only case using substantive Maryland product liability law to consider the adequacy of a pleading invoking the "indeterminate defect theory" is *Travelers Property Casualty Co. of America v. Liebert Corp.*, No. 2:18-cv-367, 2018 WL 4604292 (S. D. Ohio Sept. 25, 2018). In that case, the plaintiff alleged that a copper tube in a cooling system malfunctioned, causing damage to computer equipment. *Id.* at *1. The court reasoned that "although plaintiff did not explain why or how the copper tube leaked refrigerant at a scientific level, it asserted sufficient facts which render a product defect plausible." *Id.* at *8. Likewise, here, Great Northern's factual allegations render a defect in the meter plausible, and thus suffice to state a claim under *Twombly*.

Accordingly, Aclara's Motion to Dismiss, ECF 28, will be DENIED. Despite the informal nature of this letter, it should be flagged as an Opinion and docketed as an Order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge